*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MANN/CAPLINGER, Minors.

UNPUBLISHED
November 12, 2020

No. 352255
St. Clair Circuit Court
Family Division
LC No. 18-000412-NA

Before: O'BRIEN, P.J., and BECKERING and CAMERON, JJ.

PER CURIAM.

Respondent-mother appeals the trial court's order terminating her parental rights to her minor children, AM, CC, and HC, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (g) (failure to provide proper care and custody).[1] We affirm.

## I. BACKGROUND

This matter began on December 13, 2018, when the trial court entered an ex parte order to take the children into protective custody. Thereafter, on December 14, 2018, the Department of Health and Human Services ("DHHS") filed a petition. The petition alleged that respondent was homeless and did not have a legal source of income, and that Child Protective Services ("CPS") began providing respondent with services in August 2018. After CPS assisted respondent with locating temporary shelter at a hotel, respondent and the children entered a homeless shelter on September 11, 2018. The petition alleged that, on December 10, 2018, law enforcement located AM in a home that was subject to a "drug raid." Thereafter, AM was transported to the shelter, where respondent was located. The petition alleged that, on December 12, 2018, respondent informed CPS that December 19, 2018 "would be her last day at the shelter" and that she did not have housing or the financial ability to obtain housing. The petition requested that the trial court authorize the petition and exercise jurisdiction over the children and that the children remain in the care and custody of DHHS. After a preliminary hearing was held, the petition was authorized, and

---

[1] The trial court also terminated the parental rights of the children's fathers. The children's fathers are not parties to this appeal.

it was ordered that the children would remain in DHHS's care and custody. Respondent was granted supervised parenting time.

An adjudication trial was scheduled to be held on February 13, 2019. However, on the morning of trial, petitioner moved to amend the petition. The trial court granted the motion, and respondent admitted to the allegations in the amended petition. The trial court exercised jurisdiction over the children and ordered petitioner to make reasonable efforts toward reunification. Immediately after adjudication, the trial court entered an initial dispositional order, requiring respondent to obtain suitable housing and legal income, to submit to psychological and substance abuse evaluations, to complete random drug screenings, and to remain in contact with the agency. The trial court also required respondent to complete a domestic violence class, a parenting class, and "an intensive in-home service."

Respondent's progress with the case service plan was poor, and she failed to consistently attend parenting time visitations. Respondent's behavior during parenting time also concerned the case workers. As a result, her parenting time was suspended in October 2019. In November 2019, petitioner filed a supplemental petition, requesting that the trial court terminate respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*) and (g). The termination hearing was held on December 11, 2019. Case workers testified about respondent's poor progress during the proceeding, and respondent testified on her own behalf. After the close of proofs, the trial court found that reasonable reunification efforts were made but that respondent had failed to take advantage of the services. The trial court also concluded that statutory grounds existed to support the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*) and (g) and that termination of respondent's parental rights was in the children's best interests. This appeal followed.

## II. ANALYSIS

### A. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred by finding clear and convincing evidence supporting the statutory grounds cited in support of termination. We find no clear error warranting reversal.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). A finding is clearly erroneous if, although there was evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). To be clearly erroneous, a decision must be more than maybe wrong or probably wrong. *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999).

We conclude that the trial court did not clearly err by finding that a ground for terminating respondent's parental rights to the minor children was established under MCL 712A.19b(3)(g). MCL 712A.19b(3)(g) authorizes termination under the following circumstances:

The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child[ren] and there is no reasonable

expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child[ren]'s age[s].

Our Supreme Court has held that "a parent's failure to comply with the parent-agency agreement is evidence of a parent's failure to provide proper care and custody[.]" *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003).

In this case, the record is replete with evidence that respondent failed to comply with and benefit from the case service plan. Respondent never provided paperwork to establish that she had obtained legal income during the course of the proceeding. This was the case even though respondent maintained that she sold antiques, collectibles, and jewelry online and that she had obtained a part-time job "auto detailing." Although respondent obtained housing during the proceeding, the home was not suitable for the children. Respondent acknowledged at the termination hearing that she did not have enough beds for the children. One of the case workers observed the home to be "cluttered" and in "disarray," with "dirty dishes, clothing, numerous items all over, [and] old food." Importantly, on one occasion, marijuana and marijuana paraphernalia were seen on the coffee table in the living room. Respondent left the marijuana in plain sight despite knowing that the case worker was coming to view her home. While respondent argues on appeal that she had a valid medical marijuana card, she failed to establish during the proceeding that she did not have an issue with substance abuse. Indeed, although respondent was diagnosed with alcohol and cannabis dependency during the proceeding, she never participated in treatment and did not submit to any drug screenings. Respondent acknowledged at the termination hearing that she was prescribed Ativan, but that she had failed to consult with her doctor about the possible side effects of combining Ativan and marijuana.

Furthermore, although respondent submitted to the required psychological evaluation during the proceeding, she did so very late in the proceeding and never participated in counseling to treat her generalized anxiety disorder. This was problematic because it was believed that respondent used alcohol and marijuana in an effort to "self-medicate" and that her failure to address this would be harmful to the children's well-being. Respondent also failed to consistently attend parenting time, which impacted the children's behavior and AM's mental health. When respondent did attend parenting time, she would sometimes encourage the children to misbehave in their placements and would sometimes rely on technology instead of interacting with the children. Respondent also called AM selfish and blamed AM for making her life "more difficult" as a result of his desire to spend one-on-one time with her.

AM required mental health treatment during the proceeding, and he suffered from physical health issues such as headaches and enuresis. At certain times during the proceeding, AM's treatment was delayed as a result of respondent's failure to provide consent for medical testing and medication. Additionally, record evidence supports that CC and HC viewed respondent as a playmate as opposed to a parent. Although respondent could have benefitted from participating in a parenting skills class, respondent failed to complete her required parenting class. Respondent's intensive in-home services, which were designed to assist her with building appropriate parenting skills and establishing stability, were terminated twice because of respondent's noncompliance. The domestic violence class was never initiated—much less completed—because of respondent's failure to complete her parenting class.

Respondent also failed to remain in contact with the case workers during the proceeding even though she was required to do so. Evidence at the termination hearing supports that respondent would change her telephone number on a frequent basis but would not inform the case workers of the changes. Respondent entirely stopped responding to telephone calls and text messages in mid-October 2019, and respondent testified that she had changed her telephone number three days before the termination hearing without updating the current caseworker. Although respondent claimed that her cellular telephone often did not operate properly, she failed to rectify this issue during the proceeding. Indeed, there is no indication that respondent was unable to use technology given her testimony that she utilized Wi-Fi and Facebook to operate her business. Thus, the record establishes that, although respondent was "financially able to do so," she was unable to provide proper care and custody at the time of termination.

Furthermore, there is no evidence that respondent would have been able to provide proper care and custody within a reasonable time given the ages of the children. Respondent demonstrated a lack of commitment during the proceeding and did not take responsibility for the children being taken into care. Given the lack of evidence that respondent would comply with the case service plan, would consistently attend visitations with the children, would establish that she had obtained legal income, and would treat her substance abuse and mental health issues, it is unlikely that she would do so within a reasonable time. At the time of termination, 9-year-old AM was experiencing physical and mental health issues. CC, who was 3-1/2 years old, and HM, who was nearly 2-1/2 years old, had spent almost 12 months of their young lives in care. Because the children required consistency and permanency, we conclude that the trial court's finding that termination of respondent's parental rights was proper under MCL 712A.19b(3)(g) was not clearly erroneous.

Because we have concluded that at least one ground for termination existed, we need not specifically consider the additional ground upon which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009). Nevertheless, we have reviewed that ground and conclude that termination was also appropriate under MCL 712A.19b(3)(c)(*i*).

In reaching this conclusion, we note that respondent argues that petitioner was aware of the fact that she did not have transportation. To the extent that respondent argues that reasonable efforts toward reunification were not made, this issue is unpreserved, *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012), and our review is limited to plain error affecting respondent's substantial rights, *People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018).

Although respondent did not have a vehicle and was expected to use the bus system during the proceeding, testimony at the termination hearing supports that respondent was offered in-home services. Specifically, a mental health professional went to respondent's home to perform the psychological and substance abuse evaluations, and respondent was provided intensive in-home services to assist her with parenting and organizational skills. The in-home services were also intended to assist respondent with her issue with "chronic homelessness" and with understanding the effects of substance abuse and domestic violence. Nonetheless, respondent was terminated from two in-home services because of her noncompliance. Importantly, respondent testified that she was able to go to Kroger and to the mall on a regular basis, and that she also met with customers who wanted to purchase the items that respondent sold. In order to accomplish this, respondent secured rides from third parties and utilized the bus system. Importantly, respondent agreed that she could have ridden a bicycle to get to her appointments during the proceeding.

-4-

Thus, the evidence supports that respondent's failure to participate in services was not the result of her lack of transportation. Rather, it was the result of respondent's lack of commitment during the proceeding. Given that respondent failed to uphold her "commensurate responsibility" to engage in and benefit from the services offered by petitioner, see *In re Frey*, 297 Mich App at 248, we are not persuaded that she would have fared better if petitioner had offered other services, such as transportation services, see *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). We conclude that the trial court did not commit plain error affecting respondent's substantial rights when it determined that petitioner made reasonable efforts to promote reunification.

## B. BEST INTERESTS

Respondent argues that the trial court clearly erred by finding that termination of her parental rights was in the children's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). We review the trial court's best-interest determination for clear error. *Id.*

This Court focuses on *the children*—not the parents—when reviewing best interests. *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000). "In making its best-interest determination, the trial court may consider the whole record, including evidence introduced by any party." *In re Medina*, 317 Mich App 219, 237; 894 NW2d 653 (2016) (quotation marks and citation omitted).

> [T]he court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Although the record supports that respondent was bonded with the children at times, the record also supports that respondent was inconsistent with attending visitations. When respondent did attend visitations, she was inappropriate at times, relied on technology to entertain the children, and was never able to have unsupervised parenting time. Respondent also had difficulty managing all of the children at once, which resulted in AM requesting individual parenting time with respondent. Importantly, respondent called AM selfish for wanting to have one-on-one time with her and would blame AM for her difficulties. Respondent's inappropriate behavior toward the children affected their behavior and continued despite warnings from one of the case workers that the behavior was harmful to the children. Respondent's parenting time was ultimately suspended in October 2019, and it never resumed. At the time of termination, the children had not seen respondent in over two months, and their behavior had improved. AM was "very angry and upset with" respondent, and CC and HC viewed respondent as a "playmate as opposed to . . . a mother." None of the children asked the case worker about respondent in the weeks leading up to

termination. Thus, to the extent that respondent shared a bond with the children at the time of termination, the record supports that the bond was not healthy for the children. See *In re CR*, 250 Mich App 185, 196-197; 646 NW2d 506 (2002), overruled on other grounds by *In re Sanders*, 495 Mich 394 (2014).

Additionally, the parent-child bond is only one factor for the trial court to consider. See *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). As already discussed at length, respondent failed to comply with the case service plan, and testimony supported that respondent "struggle[d] with her interactions with the children and being able to parent all of them." Respondent consistently demonstrated a lack of commitment, an inability or unwillingness to accept responsibility, and an inability to provide stability and permanency to the children. Meanwhile, the children were doing well in their respective placements, where they had the opportunity to obtain permanency. According to one of the case workers, the children's placements provided "the stability . . . that they desperately need[ed]," as well as food, clothing, and other basic necessities. AM's foster parents were ensuring that AM's medical needs and mental health needs were being addressed. The record supports that AM was bonded to his foster parents and that CC and HC were bonded with the paternal relatives with whom they were placed. For these reasons, we conclude that the trial court did not clearly err by finding that termination of respondent's parental rights to the minor children was in the children's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jane M. Beckering
/s/ Thomas C. Cameron